Our next case is Johnson v. United States. Mr. Eisenberg, so please, the court, we're not here asking this court or the lower court to be some sort of supercorrection board. We're here because simply as a matter of evidence, as a matter of law, and a matter of scientific certainty, the board and the military has erred in the diagnosis and treatment of my client. The lower court correctly noted that for the past, for ten years in Mr. Johnson's service, he was continually having mental health episodes that we assert were incorrectly identified as adjustment disorder. The definition of adjustment disorder under the DSM is simply that if you have an episode that lasts three to six months, then you need to look at something greater like bipolar disorder. Well, you had a determination by the board and it was twice reviewed by the Court of Federal Claims, correct? Yes, sir. And the judgment was that it was a stress-related adjustment disorder rather than a bipolar disorder. Aren't those fact-determinations to which we owe deference? We would if they were factually sound. However, in the seven medical... Well, the soundness or unsoundness is a factual determination, isn't it? But when the board knew that the medical diagnosis were incorrectly proffered, of the seven medical practitioners that the military put forward, only one was a psychologist. There was no forensic psychologist, in fact, I apologize if I miss the terms, that actually diagnosed my client. Yes, I see a lot of attention paid to the qualifications of the various professionals that work with Mr. Johnson, but as a practical matter, wouldn't I give more credibility to a psychologist who spent ten years with a person rather than a psychiatrist who spent one interview? But the psychologist didn't... Well, the first psychologist, I think, only spent a total of 20 minutes, and that person was the psychologist. I'm not... I'm giving you a hypothetical, not seizing on any facts. The point is that we have a great number of people who have spent time with him. Why would we make some great legal distinction based on whether they spent an extra year or two in postgraduate study? Because, Your Honor, that's what sets them apart. That's what makes them the experts. That's what makes them the individuals who are actually qualified to make these determinations. With all due respect, Your Honor, if I came in here and started arguing a case and then left, and we found out that I wasn't a licensed attorney, I think there would be problems, would there not? Well, it would probably depend upon how well you did. Yes, Your Honor. And whether we agreed with you. But obviously, one party or another is obviously going to have a dispute with that. But he was diagnosed with an adjustment disorder in 91, 97, 98. Then 11 years after the discharge, we have a series of further diagnoses, but only one says, well, this bipolar disorder could have gone back to the period 11 years earlier. Well, if I may, there are, I think, two specific things we need to look at. First, I'm going to harp on the lack of qualifications, because in all those diagnoses regarding adjustment disorder, they do not pinpoint, as they're supposed to, what the stressor was. Wasn't it a miracle situation, as well as their related situations? Well, and we learn of that through my client's own assertions that the government attempts to refute as being nonsensical. But again, we don't know what those, I use the term loosely, doctors were thinking at the time, because they simply said adjustment disorder, go away. When was the forensic psychiatric report delivered in a timely fashion? Wasn't that after the decision by the BCNR? I apologize, Your Honor, I did hear you. I think I was a little confused by the question. You're saying that there was a subsequent report by a forensic psychiatrist who was more knowledgeable, better educated, whose evidence should be given more credibility. Wasn't that submitted late? But how is that submitted late? That's what I'm a little confused about. If it wasn't, tell me why it wasn't. It wasn't submitted because at the time it did not exist, when Mr. Johnson submitted his first BCMR. But it could have, couldn't it? There are, I'm sure, a lot of things that could have been done, but it didn't seem to be relevant because Mr. Johnson, who was pro se at the time, believed that the military would actually do what was correct, what they should have done. And because they didn't, he realized that he needed to go back with this report. And there's nothing in the regulations that say he can't. I mean, 10 U.S.C. 1221, if I remember my site correctly, the mandating statute for the BCNR basically says that they can hear a case as just as so requires, which in my mind leaves a very open, you can bring back the case as many times as you want if you can show just as requires. Does it need new and material evidence, though? That is, as we've argued in our brief, the report from the doctor, the forensic psychiatrist, is new material. It wasn't available at the time, and it did show and help enlighten... But the evidence upon which the report was based was not new, was it? The report was based on an earlier existing set of... And yet no one of proper qualifications ever examined the situation. Mr. Eisenberg, if there is this hierarchy, which I question a little bit of medical professionals, if there is this hierarchy, why would you wait until after your case is over to get the most important, the top level of the food chain, an opinion from that person? Well, Your Honor, if you recall, the board itself took it upon itself to have an expert or have some additional medical practitioners actually look at the record and make a determination that those individuals were not qualified to make the kind of decisions that they did. However, recognizing after the fact that they used inappropriate medical professionals, then he realized that he needed to get his own, which he did. And this isn't a situation where he came back ten years later and said, okay, now I have an expert. He was on top of it. And if I can move away from that for just a second and go to the fact that ultimately, this court, lower court are not fact finders. This court and the lower court are not a super board of correction and they are not subject matter experts when it comes to how these medical reports should be properly incorporated. Which I would argue, therefore, that since we did have the reports before the BCNR and the secretary for the BCNR acted without board approval, without actually having the board look at the report and determine if it was new material evidence, the lower court and this court didn't have jurisdiction to hear the matter. That following Lipsman, they should have sent it back. I would argue that this court should send it back. And if we need to focus, if you want, on the simply the… Are you saying the claims court didn't have jurisdiction to review the BCNR action? What the claims court should have done is when they sent the claim back, they should have also insisted that the new medical report be at least examined for the simple context of whether or not it was new material. But that never occurred. Therefore, the BCNR's final decision was incomplete. Therefore, the BCNR, the CSC had not the sufficient evidence and record before in order to make a decision. It should have been sent back. I think my time is up. Unless there's any other questions? We'll save the rest of your rebuttal time, Mr. Reichert. Yes, Your Honor. Thank you. Mr. Bruskin. Good morning. May it please the court. As the court has already discussed, the decision of the Court of Federal Claims and the board below is supported by substantial evidence here. The only mental health professional to examine Mr. Johnson while he was still in the military was a Navy psychologist who examined him over a four-month period and diagnosed him with an adjustment disorder. Every mental health professional who diagnosed him up until 2004 confirmed that diagnosis. Mr. Johnson never reported signs inconsistent with that diagnosis and the treatment for that diagnosis worked up until the time when he was diagnosed. What about the later psychiatric report, crediting the greater education as providing more opportunity for an accurate analysis? Why wasn't that new in material evidence? The report was new, right? Well, under the Navy's regulation 32 CFR 723.9, it doesn't actually qualify as new. To be new, it has to be two things. One, it has to not have been reviewed by the board. That was clearly the case here. But second, it needed to not have been available to the applicant at the time of his application. There's no indication, there's not even really an argument as to why that report was unavailable. In fact, if you look at the… In other words, he could have gone to the psychiatrist early. He could have. In fact, there's two points on that. One, he was told by his treating psychologist in the 90s that if he wanted to take action against the Navy, he should get a forensic report. Second, when the Navy Behavioral Health Care Clinic did their report for the BCNR in April 2006, Mr. Johnson was given an opportunity to respond to it. What he did was he ran out and got the report from Dr. Maddow, which he submitted with his response to the Behavioral Health Care Clinic report. So, not only could he have gotten a forensic report before his application, he could have gone out after seeing that the Navy psychiatrist who reviewed his case didn't agree with him and gotten a forensic psychiatric report at that time. He failed to do so. So, I would argue that it is anew under the Navy's regulations. Now, Mr. Johnson is also making a regulatory appeal here. Do we have jurisdiction over that? You don't. He didn't raise the issue with respect to 723.9 below. Well, he was pro se. We give a good deal of leniency to people in that situation. If this isn't waived, do we have jurisdiction? Well, the issue wasn't raised below, but if it had been properly raised below… Assuming it's raised properly because he was pro se, he's doing his best job he could, and so now we have it before us, do we have jurisdiction? The government's position is that this court and the Court of Federal Claims would have jurisdiction because under the APA, Section 704, it divests from the district court jurisdiction over APA challenges where another court can provide full and adequate remedies. The remedies sought here by Mr. Johnson in his appellate brief is that what he wants this court to do is say the regulation violates the enabling statute and therefore the court should remand the case for a consideration of his evidence. He's not seeking what's traditionally sought in APA, an injunction preventing the agency from enforcing the regulation. His relief is the relief that the Court of Federal Claims traditionally can give to someone seeking correction of their military record. The Court of Federal Claims has no Administrative Procedure Act jurisdiction, does it? It does to the extent that although Section 702 of the APA gives to district courts jurisdiction, Section 704 says where there's jurisdiction, where a full and adequate remedy can be given in another court, that court has jurisdiction, not the district court. So it's the government's view that if that's properly before us, we can deal with it. Correct. Let me ask you, the government had the same problem that some of us have been having, which is trying to figure out who is who and what their credentials are. For those of us who think graduate credentials have some meaning, let me be sure I understand who is who. If I read the record correctly, I think you mischaracterized it, but let me just make sure we're on the same page. He saw a Dr. Slagle in 2004. Correct. And Dr. Slagle was in fact a non-Navy psychiatrist. Correct. A qualified psychiatrist. And Dr. Slagle diagnosed him with the bipolar problem in 2004. He then saw a Dr. Kaye in 2007, right? 2006, November 2006. 2006, thank you. He saw Dr. Kaye in 2006, and Dr. Kaye, again as a psychiatrist, diagnosed him with bipolar. And that's the contentious issue as to whether Dr. Kaye's evidence should be admitted or at least allowed to go into the board. And that's the question of whether the executive director has authority under the statute to preclude the board from even dealing with that question. Two questions. It's one, whether the executive director has that power. It's also whether the report is actually new in material, and as we discussed, it does not qualify as new because it was available to him at the time that he submitted his application, and he provides no explanation for why it was unavailable to him. Now, it's also the case that even though the Navy used mostly psychologists and interns in their treatment of Mr. Johnson, it's also the case, however, that when the BCNR asked for an opinion from NNMC, the opinion was in fact issued by at least a psychiatry resident, isn't it? Well, it was issued by two. It was a psychiatry resident and a staff psychiatrist. And a staff psychiatrist. We don't know very much about their credentials because the record doesn't tell us very much. Correct. I would also point out that in October of 1997, he was examined by Dr. Adonis Amparo, who was a staff psychiatrist for the VA. So it is not as if until 2004 he had never been seen by a medical psychiatrist. He had been seen by both. So basically what the board had before it was a series of opinions from Navy personnel psychologists and staff psychiatrists who said no, and one or two, depending upon whether Dr. Kaye's evidence is admitted, who were not Navy personnel, and both of whom said bipolar. Well, there were also, in May of 2005, he got a report from a Dr. Joyce Oates, who was a VA psychiatrist, who diagnosed him with depression and a personality disorder, but did not diagnose him as having any signs of mania or hypomania, which are signs of bipolar disorder. He also submitted the report of Dr. Matto, who was a psychiatrist, the report he got after the NNMC report, which, although diagnosing him with bipolar disorder, did not offer a retrospective opinion as to whether he had bipolar disorder while he was in the military. So those are the additional pieces of evidence. The report by Dr. Oates and Dr. Matto were submitted by Mr. Johnson, but they don't actually set forth an opinion that he had bipolar disorder and not adjustment disorder. Your basic position with regard to Dr. Kaye is that it wasn't new because he could have, perhaps if he'd had Mr. Eisenberg representing him, he could have obtained a second psychiatric opinion from a non-Navy person prior to 2006. Correct. Nothing prevented him from getting a report of a forensic psychiatrist at any time prior to 2007. It's purely material, though, isn't it? Well, the government would argue that it isn't material. Materiality isn't just simply that it's related. It's that it would have a substantial effect on the outcome of the decision below. And here, Dr. Kaye's opinion is the same as Dr. Slagle's opinion. Dr. Slagle is a board-certified psychiatrist, and his opinion is the same, and it's based on the same evidence. And so the government would contend that the report is, in fact, redundant, whether or not you can say that perhaps... But Dr. Oates, a psychiatrist, also contested the validity of Dr. Slagle's diagnosis, right? Well, actually, the psychiatrist from the NNMC who reviewed Dr. Slagle's report went into some detail contesting their... And that's Dr. Oates. Well, it was Drs. Dadson and Weber from the NNMC. Dr. Oates was a VA compensation opinion. Oates actually came in with an entirely separate analysis that was neither bipolar nor the temporary distress analysis. But the Navy psychiatrist in April 2006 who reviewed all the medical history, including Dr. Slagle's report, did question the basis for his diagnosis. And there is also a Seventh Circuit case that we point out that questions, really, whether or not one can look back 15, 20 years and diagnose bipolar disorder because it does require contemporaneous examination of the patient. And so this certainly is questionable. The board statute makes reference to one of its functions is to correct an injustice. I take it the government's position is that a chief petty officer who resigns after 18 years of exemplary service, two years short of a retirement qualification. I wonder how many chiefs ever do that. But the government's position that his... I would suspect it does, actually, because I can't imagine why, given the rather good jobs that chief petty officers have, why he would leave two years short of retirement, particularly if he was having any kind of emotional problems, unless those emotional problems somehow interfered with his judgment, which I suppose a bipolar illness might have. But in any event, I take it the government's position there's no injustice in holding him to what some people might think of as a quite irrational act, given his history. I think if you look at the record, it actually reveals rational reasons why he might have done what he did. The first was that he... He was going to go into business. Well, no, that he was given remote tours, and it was causing family stress. And the record reflects that he was going to be sent on another remote tour at the time he decided to voluntarily separate from the Navy. So the government would contend that that's a rational reason for leaving the service after 18 years. But yes, the government would contend that there hasn't been an injustice here that needs correcting. Can I go back to our jurisdiction debate a minute ago? The Court of Federal Claims cannot invalidate this rec, which is what they're asking for. Where's the jurisdiction? The government would contend that what... They can give a remedy. They cannot give the remedy that Mr. Johnson's requesting. The government would contend that the Court of Federal Claims could give the remedy of not invalidating the statute, but saying that in the Court of Federal Claims view, the regulation violates the statute, and therefore the review by the executive director violates the enabling statute and remand for review by the full board. And that's the relief that they're seeking. That wouldn't serve as an injunction of any kind to the agency for using that regulation. Obviously, perhaps it could be used later in another... So you're... It would be stopping one action and requiring another. That's not an injunction. They would be saying that in this case, the executive director's review of the motion for consideration was improper and remanding for review by the full board. And your view is that that would not require invalidation of the regulation, but only invalidation of his action? Correct. Government makes nice distinctions. Unless there are any further questions, we would ask the court to affirm the decision of the Court of Federal Claims and the board below. Thank you. Thank you, Mr. Bruskin. Mr. Eisenberg. Thank you, Your Honor. If I may, several points I'd like to make. Throughout the record, there is no, quote-unquote, consistent medical evidence that shows that he's suffering from adjustment disorder. There are plenty of medical records from the time that he was in the Navy and also afterwards while he was getting treated by the VA that he had severe other problems than just adjustment disorder. You've raised something I'd like you to clarify for me. As I read the record, he is, in fact, getting a VA pension for mental illness. Yes, sir. And I was puzzled as to why he suddenly chose to go to the board for the correction of records because in the cases we get from that board, they almost invariably say no. So maybe he didn't know that. But wouldn't his best relief be back in the VA asking for a higher rating? Your Honor, I'm going to delve completely on personal experience, if I may. As you all may be aware, I represent many military members in what's called records corrections, as we are here today. And it's not so much necessarily an issue of, well, better off here or better off there. We need to remember that the military and the VA are two distinct separate pots of money. That's my point. That they are entitled to. That they are entitled to both. And also, whether it's an issue of money, some simply want the recognition that they were injured in the military and that they should receive a medical separation or retirement because that tells them that not the VA identifies that they have a problem but that the military identifies a problem. Well, isn't his VA compensation a service-connected compensation? Yes, it is a service-connected, as recognized by the VA, but not necessarily recognized by the military. So they are – I mean, it's an extra medal that they are entitled to. They went through a campaign. They deserve the ribbon, and they're entitled to wear it. There's a good number of my cases that I deal with aren't so much about money. It's about the recognition. All of which he's entitled to. Okay, thank you for that answer. If I may continue. Please. Before he left the military, there was a doctor's report, and I apologize, I don't remember the name, who basically said that his security clearance needs to be removed, that he needs to be watched, and if this continues on, then there needs to be an administrative, not a medical. But the command decided, no, we're going to keep him doing what he's doing. So the command, again, if you will, ignores the medical advice or the medical facts before it, and simply just pushed him through. Part of the issue about his early retirement also is the fact that he felt ganged up upon. As you know, he was suffering from, or we assert that he was suffering from, paranoia, where he did have suicidal ideations. And his ratings, while okay, weren't enough to continue to move him forward. He felt pressured, and he felt that he would not get a fair shake in the military, because his mental health issues were not being improperly addressed, and he was getting retribution from his command. While he was seeking help in the VA, there are plenty of reports that show that he didn't have suicidal ideation, he had homicidal ideation, that he was suffering from sub-PTSD. So to say that there's a clear line of adjustment disorder from the military to the VA and so forth is simply disingenuous. Also, when you have that kind of adjustment disorder for well over 10 plus years, there has to become a point where someone says, hey, maybe this isn't adjustment disorder. Let me ask you one final question. Are you about, have you made your points? No, but I'm more than happy to answer your questions first, John. Chief Judge Rader and I sat yesterday on a veterans case, and the question arose in that case, how does the veterans canon play in this, the veterans, pro-veterans? Chief Justice Rader pointed out that we give deference to pro se, some, deference may not be the word, but we try to be protective of pro se's. We also try to be protective of veterans as a pro-veterans canon, as I'm sure you were aware. Yes, Your Honor. Does that play, have any play in this case? Absolutely, because we should be, as our Supreme Court has told us, put the thumb on the scale in favor of the veteran. Why not? How would that play? Where in this case would that fit? Well, specifically. If it fit anywhere. Specifically, the reading and proper analysis and integration of the report that we provided, that my client provided before the VCNR and his request for reconsideration. Why not hear what he has to say? I see my time is up. Unless there's any other questions, Your Honor. Thank you, Mr. Eisenberg. Thank you.